UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYPRUS A. WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 293 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cyprus Watts was "separated"—that is, discharged—from the United States Army in August 2008 after she tested positive for marijuana. Upon separation from the Army, Ms. Watts received a discharge characterized as "General under Honorable Conditions" (as opposed to the more favorable "Honorable" characterization) and was assigned a reentry code of "4" (that is, ineligible for reenlistment). Plaintiff maintains that the Army separated her without considering her potential for rehabilitation, in violation of the Army's own regulations. She alleges that her discharge characterization and reentry code have resulted in hardship, including rendering her ineligible for education benefits under the Montgomery GI Bill Act of 1984 ("GI Bill") and compromising her ability to find work in military logistics, her field of training. Plaintiff sought relief, in the form of an upgrade of her discharge characterization and a modification of her reentry code, from the Army Discharge Review Board and the Army Board for Correction of Military Records ("ABCMR," or the "Board"). In a series of decisions, both boards ultimately concluded that her discharge was proper and denied her requests.

Plaintiff brings this action challenging the decision of the ABCMR under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). According to Plaintiff, the Army failed to follow its own regulations when it discharged her without considering her potential for rehabilitation, and she contends that the ABCMR abused its discretion when it approved the circumstances of her discharge. The Government denies that the Army disregarded its regulations and argues that the ABCMR was justified in approving her discharge. In support,

the United States notes the required presumption that military officers discharge their duties correctly, lawfully, and in good faith. The parties have filed cross-motions for summary judgment [13] [15]. For the reasons stated below, the court grants Plaintiff's motion and denies the Government's motion.

## **BACKGROUND**

The court takes the following facts from the certified copy of the administrative record that the Government has provided. (*See* Cert. Copy of Admin. Rec. [12] (hereinafter "AR").) Plaintiff enlisted in the Army in July 2005 at the age of 21. (*Id.* at 55.) She served for six months in Iraq, from February to September 2006, and received a number of medals recognizing her service, including the Army Commendation Medal for exceptionally meritorious service during Operation Iraqi Freedom. (*Id.* at 55, 131–32, 224.) Both before and after her term in Iraq, Plaintiff was stationed at Fort Hood, where she worked as a unit supply specialist. (*Id.* at 55.)

Things did not go well for Plaintiff after her tour in Iraq. Approximately fourteen months after her return to Fort Hood, Plaintiff married a man who abused her emotionally and physically over the course of their marriage. (*Id.* at 56.) For example, Plaintiff recalls an incident in January 2008 when her husband drove a car toward her before braking and allowing the car to roll into her. (*Id.* at 62.) During another incident that month, he allegedly pinned Plaintiff to the ground, tore her pants, and "roughed up" her hair, then broke a window in the house and kicked down the front door after Plaintiff attempted to lock him out. (*Id.*) A few months later, on April 16, 2008, multiple witnesses saw Plaintiff's husband pick her up and pin her to the ground during an argument. (*Id.* at 194, 197, 200.) Plaintiff's husband suffered a bloody nose as a result of the altercation, and after being escorted to the police station following the incident, he reported that Plaintiff had assaulted him. (*Id.* at 157, 175.) Plaintiff was taken to the police station, where she admitted having struck her husband on the nose. (*Id.* at 175.) When Plaintiff returned home the following day, it appeared that her husband had urinated on her clothes, and

in the course of an ensuing argument, Plaintiff poured dish detergent on him. (*Id.* at 167–68.) Plaintiff's husband was ultimately charged in federal court with assault and destruction of property. (*Id.* at 65–67.) He pleaded guilty to two counts of assault arising out of the January incidents, and was sentenced to three days in prison and one year of probation. (*Id.* at 69–70.)

Approximately three weeks after the April altercation, on May 5, 2008, Plaintiff tested positive for marijuana in a routine urinalysis. (*Id.* at 160.) According to Plaintiff, her husband continued to abuse her after this positive test. She alleges that on May 18, 2008, he punched her in the face while she was driving, continued to beat her as she attempted to flee, and ultimately raped her in the car's backseat. (*Id.* at 56.) Yet another incident occurred, as well, but Plaintiff was reluctant to report it, and the police allegedly discouraged her from filing a report against her husband with them. (*Id.* at 56–57.) She ultimately filed a confidential report that would not result in a notification to her unit supervisors. (*Id.* at 57.)

According to Plaintiff, at the time that the Army initiated disciplinary and separation proceedings against her for marijuana use, she had already begun taking steps to treat her mental health and substance abuse problems. On July 2, 2008, Plaintiff received a "Developmental Counseling Form" from the Army. (*Id.* at 158.) Among other things, the form notified her that separation proceedings would be initiated against her and that she would be enrolled in the Army Substance Abuse Program and subject to punishment under the Uniform Code of Military Justice. (*Id.* at 159.) On July 11, the Army began a non-judicial proceeding to determine whether Plaintiff should be punished for wrongfully using marijuana, striking her husband's nose, and pouring dishwashing detergent on him. (*Id.* at 156–57.) The proceeding concluded three days later and resulted in a reduction of Plaintiff's military grade, a loss of pay, and extra duty. (*Id.* at 156.)

Plaintiff completed the required Army Substance Abuse Program on July 10. In addition to her participation in that mandatory program, Plaintiff maintains that she made significant voluntary efforts at rehabilitation, including pursuing treatment for the mental health conditions

3

that may have contributed to her decision to use marijuana. Those efforts included attending individual therapy sessions and group therapy sessions for victims of domestic violence. (*Id.* at 57, 81.) A counselor from the group sessions reported that she believed Plaintiff was "redeemable and that it would be a shame to see her separate from the Army." (*Id.* at 86.) The counselor also reported that Plaintiff had "good insight" and had attended the group session regularly, appearing "to really work at trying to get something out of her groups." (*Id.*) In addition to attending therapy sessions, Plaintiff began taking the prescription antidepressant Celexa to treat her anxiety and depression. (*Id.* at 81, 141.) To address her substance abuse problem specifically, Plaintiff attended both Alcoholics Anonymous and Narcotics Anonymous meetings. Although she did not have an alcohol dependence, Plaintiff attended the Alcoholics Anonymous meetings regularly—nearly every day from early June until mid-July, when her assigned extra duty limited her ability to attend—because she felt more comfortable expressing herself at those meetings. (*Id.* at 57.) Plaintiff wrote a letter, dated August 8, 2008, to justify her retention in the Army. (*Id.* at 141.) In the letter, Plaintiff acknowledged that "turning to drug use to solve or to cover up [her] emotional problems was the completely wrong thing to do." (*Id.*) She also recounted the steps she had taken to rehabilitate herself and stated her belief that those efforts would "ensure that [she would] never be in th[at] situation again." (*Id.*)

The day before Plaintiff sent the letter seeking retention, she received a notice of separation from her commanding officer, Captain Kristin Doneth. (*Id.* at 143–48.) A memorandum accompanying the notice informed Plaintiff that Captain Doneth would be recommending that Plaintiff be separated from the Army for her abuse of illegal drugs and that she be issued a "General Under Honorable Conditions" discharge. (*Id.* at 146.) An attached form filled out by Captain Doneth included the following sections:

j. Description of rehabilitative attempts, if applicable: Solider was enrolled in the ASAP program [Army Substance Abuse Program] and completed the program on 10 July 2008.

o. Statement why the commander does not consider it feasible or appropriate to accomplish other disposition: Soldier has tested positive

>     for illegal substance which is not compatible with continued military
>     service.

(*Id.* at 144.) Captain Doneth's supervisor approved the recommendation (*id.* at 140), and on August 14, 2008, Colonel Lawrence Phelps also approved the recommendation and directed that Plaintiff be separated from the Army and issued a "General Under Honorable Conditions" discharge. (*Id.* at 139.)

In June 2010, the Army Discharge Review Board determined that Plaintiff had been properly discharged and denied her request for a change in the character of her discharge. (*Id.* at 120.) Plaintiff then petitioned the ABCMR, seeking an upgrade of her discharge characterization, a modification of her reentry code, and a corrected record of her service, including a complete list of the military awards she had received. (*Id.* at 115.) The ABCMR determined that certain awards should be added to Plaintiff's record but otherwise recommended that her request be denied, and the Army approved the Board's recommendation in January 2011. (*Id.* at 114, 119.) In 2013, the ABCMR determined that Plaintiff's request for reconsideration of its 2011 decision was untimely, and Plaintiff sought judicial review in this court. (*Id.* at 92); *Watts v. United States*, Case No. 15 C 8694 (N.D. Ill) (Darrah, J.). That lawsuit ended when the court granted the parties' joint motion for remand to the ABCMR. (AR at 89.) On remand, Plaintiff again requested an upgrade of her discharge characterization and a modification of her reentry code. (*Id.* at 41.) The Board denied her request in December 2016. (*Id.* at 2.) The parties agree that the ABCMR's 2016 decision was the Army's final action and is the action under review in this case. (*See* Pl.'s Reply in Supp. of Mot. for Summ. J. [20] at 2 n.1.)

On remand from the district court, Plaintiff argued to the ABCMR that the Army had erred and committed an injustice by failing to comply with its regulations when deciding to separate her. Specifically, she contended that before taking action to separate a soldier for misconduct of the type Plaintiff engaged in, the Army is required to consider her potential for rehabilitation and determine that rehabilitation is impracticable or unlikely to succeed (AR at

5

42–43; *see also* Army Regulation ("Army Reg.") 635-200, ¶ 14–2a(1)–(2), Regulatory App'x to Def.'s Cross-Mot. for Summ. J. [15] (hereinafter "RA") at 76 ("Action will be taken to separate a soldier for misconduct when it is clearly established that [d]espite attempts to rehabilitate or develop him/her as a satisfactory soldier, further effort is unlikely to succeed [or] [r]ehabilitation is impracticable or the soldier is not amenable to rehabilitation (as indicated by the medical or personal history record)."); *id.*, ¶ 1–15a, RA at 34 ("Unless separation is mandatory, the potential for rehabilitation and further useful military service will be considered by the separation authority.").) As a result of her unfavorable discharge characterization and reentry code, Plaintiff contended, she had suffered difficulty in finding a job and was financially unable to pursue further education. (*Id.* at 41.) In denying Plaintiff's application, the ABCMR addressed her argument concerning the Army's rehabilitation regulations as follows:

> Counsel contends that the applicant was unjustly discharged and bases his argument on the Army's failure to allow her an opportunity for rehabilitation only as it applies to substance abuse. However, the Army's policies relating to rehabilitation have a much broader scope, including a Soldier's ability to master training and overall military bearing and conduct. The governing regulations clearly specify that all Soldiers who are identified as drug abusers, without exception, will be referred to the ASAP [Army Substance Abuse Program] and processed for administrative separation.

(*Id.* at 24.) The Board also noted that Plaintiff had previously engaged in incidents of aggression and emphasized that characterization of a soldier's service may be based on standards of acceptable personal conduct and may be adversely affected by conduct that brings discredit to the Army or is prejudicial to good order and discipline. (*Id.* at 24–25.) The ABCMR ultimately concluded that Plaintiff's service in the Army did not meet the standards of acceptable conduct necessary to receive an honorable discharge. (*Id.* at 25.) Though the Board acknowledged that Plaintiff had a tumultuous marriage, it did not find her circumstances "so extenuating as to justify upgrading [her] discharge to honorable." (*Id.*)

Plaintiff filed suit in this court in January 2017, seeking relief in the form of an upgrade of her discharge characterization and a change to her reenlistment code. The parties have filed cross-motions for summary judgment. Plaintiff maintains that the Army failed to follow its own

regulations by separating her without considering her potential for rehabilitation and that the ABCMR's decision approving the Army's action lacks the support of substantial evidence and is contrary to law. The Government contends that the ABCMR reasonably found that Plaintiff's separation from the Army was appropriate and consistent with Army regulations.

## **DISCUSSION**

When reviewing the actions of an agency under the APA, a district court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "unsupported by substantial evidence," *id.* § 706(2)(E). As mentioned above, the parties in this case agree that the ABCMR's 2016 decision was the final agency action in this case. The Board is authorized to act, on behalf of the Secretary of the Army, to correct any military record of the Army when doing so would be "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Its decisions are subject to judicial review under the APA. *See Chappell v. Wallace*, 462 U.S. 296, 303 (1983).

It is generally appropriate to resolve a challenge to agency action through summary judgment because the reviewing court's task is "to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). The "arbitrary and capricious" standard that applies in this case is a deferential one. A reviewing court may not "substitute its judgment for that of the agency" and "should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (internal quotation marks omitted). Yet an agency still must "articulate a satisfactory explanation for its action." *Id.* at 513. In addition, it is "well established that a military review board acts arbitrarily [if it fails] to respond to arguments raised by a plaintiff, which do not appear frivolous on their face and could affect the Board's ultimate disposition." *Rudo v. Geren*, 818 F. Supp. 2d 17, 25 (D.D.C. 2011) (internal quotation marks omitted).

Plaintiff contends that ABCMR's decision was arbitrary and capricious because it failed to address her contention that the Army violated its own regulations by firing her without considering her prospects for rehabilitation. The court agrees.

I. **Plaintiff's Argument Concerning the Army's Rehabilitation Regulations**

A military board's decision may be arbitrary if it fails to respond to arguments that "do not appear frivolous on their face and could affect the [b]oard's ultimate disposition." *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997). Plaintiff's argument that the Army failed to follow its rehabilitation regulations is not frivolous; on the contrary, the argument is quite persuasive. There is no dispute that where the Army is considering separating a soldier because of misconduct under Chapter 14 of the Army's Administrative Separation regulations, separation is permissible only if it is "clearly established" that rehabilitation is impracticable or that attempts to rehabilitate the soldier are unlikely to succeed. (Army Reg. 635-200, ¶ 14–2a(1)–(2), RA at 76; Def.'s Cross-Mot. for Summ. J. [15] at 9.) There is also no dispute that separation for misconduct under Chapter 14 is not mandatory (*see* Army Reg. 635-200, ¶ 14–17a–c (allowing separation authority to disapprove of recommendation for separation)), and that therefore the separation authority was required to consider "the potential for rehabilitation and further useful military service." (*Id.*, ¶ 1–15a).

There is no evidence in the record that Colonel Phelps, the separation authority, considered Plaintiff's potential for rehabilitation or made any determination that the unlikelihood of successful rehabilitation had been clearly established. The Government does not contend that the regulations at issue were ambiguous or were not mandatory; rather, it maintains that the Army fully complied with the regulations. To support its contention, the Government emphasizes that Colonel Phelps received a "separation packet" that included a letter from Plaintiff explaining her rehabilitation efforts, as well as her counseling history and a letter from Plaintiff's commanding officer opining that a disposition other than separation was not feasible or appropriate. Because Colonel Phelps received this information regarding Plaintiff's potential

8

for rehabilitation, the Government argues, he must have considered her potential for rehabilitation and determined that the separation packet clearly established that further efforts at rehabilitation were unlikely to succeed and that rehabilitation was impracticable. Though certain factors, including the potential for rehabilitation must be considered, the Government maintains that there is no requirement in the Army regulations that the separation authority *memorialize* his consideration of those factors.

The Government's account of the Army's decision process is belied by the record in this case. In the letter Plaintiff submitted requesting that she be retained in the Army, she explained that she recognized the poor decisions she had made her in life and had begun to address her mental health and substance abuse problems through therapy, prescription antidepressant medication, and drug and alcohol counseling. (AR at 141–42.) Yet the only attempt at rehabilitation mentioned in her commanding officer's recommending form is Plaintiff's completion of the Army Substance Abuse Program. (*Id.* at 144.) It is not clear, therefore, that the commanding officer fully considered Plaintiff's potential for rehabilitation. In addition, the commanding officer determined that a disposition other than separation was not feasible or appropriate because "test[ing] positive for [an] illegal substance . . . is not compatible with continued military service." (*Id.*) The apparent zero-tolerance policy espoused by Plaintiff's commanding officer is at odds with the Army's own requirement that rehabilitation be considered and clearly ruled out as an option before separation action is taken. Colonel Phelps, for his part, approved the recommendation of Plaintiff's commanding officers without offering any opinion on her potential for rehabilitation.

The Government contends that Colonel Phelps is entitled to the "strong but rebuttable presumption that, [as an] administrator[] of the military . . . [he] discharge[d] [his] duties correctly, lawfully, and in good faith." *Frizelle*, 111 F.3d at 177. Thus the Government urges the court to presume that Colonel Phelps followed the Army's regulations and considered the materials in the separation packet regarding Plaintiff's potential for rehabilitation and found that

9

it was clearly established that rehabilitation was impracticable and unlikely to succeed. It is not clear, however, that that presumption should excuse the Army's failure to make a record demonstrating that it considered the factors it was required to consider. Applying the presumption in this case would be "strained [because] it would require the plaintiff to prove a negative." *Jenkins v. Speer*, 258 F. Supp. 3d 91 (D.D.C. 2017). That presumption might be appropriate in a case where the record contained no evidence that rehabilitation was likely to succeed or if it was clearly apparent that rehabilitation was impracticable. But in this case, in addition to Plaintiff's own documented efforts at rehabilitation, Plaintiff's records contain a statement from one of her counselors that she is redeemable and that it would be a shame if she were separated from the Army. (AR at 86.) There was thus considerable evidence in the record tending to show that further rehabilitation for Plaintiff would have been successful. That rehabilitation was impracticable or unlikely to succeed could not be "clearly established" without addressing the considerable evidence to the contrary. In any event, whether or not the Army did in fact err by failing to abide by its own rehabilitation regulations, Plaintiff's argument that it failed to do so is certainly not frivolous, and the ABCMR was required to address it. *See Frizelle*, 111 F.3d at 177.

## II. ABCMR's Response to Plaintiff's Argument

In its 2016 decision, the ABCMR did not adequately address Plaintiff's argument regarding the Army's failure to follow its own rehabilitation regulations. On the topic of rehabilitation, the Board characterized Plaintiff's argument as being based "on the Army's failure to allow her an opportunity for rehabilitation only as it applies to substance abuse." (AR at 24.) The Board rejected that argument, noting that the Army's rehabilitation policies have a broader scope and that governing regulations required all soldiers identified as drug abusers to be processed for administrative separation. (*Id.*) The Board appears to have misunderstood Plaintiff's argument in at least two respects. First, Plaintiff's contention was not that the Army afforded her inadequate opportunities for rehabilitation. Plaintiff, herself, sought out her own

10

rehabilitation opportunities apart from the Army's substance abuse program; her argument was that the Army failed to consider whether those efforts were likely to be successful. Second, Plaintiff did not confine her rehabilitation efforts or her contentions about her rehabilitation potential to the topic of substance abuse. Rather, she took steps to improve her overall mental health and purported to be addressing the underlying issues in her life that allegedly led to her problematic conduct. The Board's discussion of the rehabilitation policies is thus not responsive to Plaintiff's argument and does not address at all the paucity of evidence in the record that any commanding officer, let alone Colonel Phelps, considered her rehabilitation potential. In addition, to the extent the Board concluded that the Army was not required to consider rehabilitation because all soldiers identified as drug abusers must be *processed* for separation, that conclusion is at odds with Army regulations, which, as discussed above, require consideration of rehabilitation potential and which do not make the *action* of separation mandatory for drug offenders once they are processed for separation.

The Government's attempt to justify the ABCMR's decision is unpersuasive. According to the Government, the Board appropriately relied on the "presumption of administrative regularity," *see* 32 C.F.R. § 581.3(e)(2), and the presumption that military officers discharge their duties lawfully, to find that the Army separated Plaintiff in accordance with its regulations. But the Board's decision does not mention either presumption as the basis for a finding that Colonel Phelps complied with the rehabilitation regulations. Justifying the Board's decision on the basis of a presumption that it did not cite is a "post hoc rationalization[] [that] cannot suffice." *Van Bourg v. Nitze*, 388 F.2d 557, 565 (D.C. Cir. 1967). And, as the court discussed above, even if the Board did apply the presumption of administrative regularity or the presumption that military officers carry out their duties lawfully, those presumptions would require Plaintiff to prove a negative and would not be sufficient to excuse the lack of evidence in the record concerning the Army's consideration of Plaintiff's potential for rehabilitation. Indeed, relying on those presumptions in this case to "attempt[] to explain what findings [Colonel Phelps] must

have made, and what factors [he] probably did rely on" would be just another instance of post hoc rationalization. *Id.*

The Government also contends that the ABCMR ultimately made the correct finding that no injustice existed that would warrant upgrading Plaintiff's discharge because soldiers separated for misconduct like the use of illegal drugs often face worse consequences, including trial by court-martial and a discharge characterization of Dishonorable. But the fact that Plaintiff could have faced worse consequences as a result of her separation is beside the point. The issue in this case is whether the Army acted appropriately in separating Plaintiff *at all*. In theory, one could imagine the ABCMR finding that Plaintiff was not separated in accordance with Army regulations but that, for other reasons, the error is not one that the Board could appropriately correct by updating Plaintiff's discharge characterization. The Board did not make that finding in Plaintiff's case, however, and would have to "articulate a satisfactory explanation for its action" if it were to make such a finding. *Fox*, 556 U.S. at 513.

### III. Remedy in This Case

The Government maintains that there is no authority under Army regulations to amend Plaintiff's reentry code absent an administrative error, such as a mistaken finding that Plaintiff had used illegal drugs. *See* Army Reg. 601-210, ¶ 3-24, RA at 92 ("PS Army personnel will be advised that [reentry] codes may be changed only if they are determined to be administratively incorrect."). It is not clear to the court from the face of the cited regulation that the only basis on which Plaintiff could seek amendment of her reentry code is evidence that she did not in fact use illegal drugs. Instead, the regulations appear to allow, if the ABCMR were to determine that Plaintiff was not properly separated from the Army, that her assigned reentry code could be considered "administratively incorrect." It is also unclear to what extent the cited regulation is binding on the ABCMR. Plaintiff asks this court to remand the issue of whether her reentry code could be amended, citing the Secretary's discretion to provide equitable relief in cases of administrative error. *See* 38 U.S.C. § 503(a). Because the meaning of "administratively

incorrect" is ambiguous and the binding nature of the regulation is unclear, the court agrees that it would be appropriate for the ABCMR to address this issue in the first instance.

Indeed, the court is inclined to remand the entire case to the ABCMR for further consideration. The court concludes that ABCMR acted arbitrarily by approving the Army's decision without addressing her argument concerning the Army's compliance with its rehabilitation regulations. But it is not clear that it would be appropriate, as Plaintiff suggests, for this court to order an upgrade to Plaintiff's discharge characterization. As addressed here, her argument concerning the Army's failure to comply with its regulations appears to be compelling. The ABCMR, however, has greater expertise than this court in interpreting Army regulations and determining the appropriateness of discharge characterizations. Given those considerations, it may be appropriate to give the ABCMR another opportunity to address Plaintiff's arguments more fully. In addition, the court notes that the provision of the APA that authorizes arbitrary and capricious review, the standard applied in this case, allows reviewing courts to "hold unlawful and set aside agency action." 5 U.S.C. § 706(2). But the provision that authorizes courts to *compel* agency action suggests a different standard, speaking only of actions "unlawfully withheld or unreasonably delayed." *Id.* § 706(1). The court therefore orders Plaintiff to show cause why the entire case should not be remanded for further consideration by the ABCMR.

## CONCLUSION

For the reasons stated above, the court grants Plaintiff's motion for summary judgment [13], denies the Government's motion for summary judgment [15], and orders Plaintiff to show cause by January 4, 2018, why the court should not remand this matter in its entirety to the Army Board for Correction of Military Records.

ENTER:

Dated: December 8, 2017

_____
REBECCA R. PALLMEYER
United States District Judge

13